## Philadelphia Civil Service Commission *v.* Cummings, Appellant.

Argued November 16, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*John Patrick Walsh,* with him *Leon Rosenfield* and *Walsh, Tubis & Dunn,* for appellants.

*Jerome J. Shestack,* with him *Richard H. Markowitz,* Assistant City Solicitor, *Robert M. Landis,* First Deputy City Solicitor and *Abraham L. Freedman,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE CHIDSEY, January 12, 1954:

Appellants, Edwin Jones, Jr. and Walter Cummings, are hosemen in the Fire Department of the City of Philadelphia. At the time of the incident which occasioned this litigation, Jones was the regular driver of a thirteen ton fire truck operated by Rescue Squad No. 2 and Cummings was the Acting Lieutenant in charge of the truck. On December 4, 1951, at about

5:30 P.M., Jones, Cummings and three others manned the fire truck in response to an alarm, originating from an alarm box in the vicinity of Orthodox and Large Streets.

They proceeded east on Orthodox Street and were following Pumper No. 20, driven by hoseman Joseph Lamack. While Jones' attention was momentarily diverted by a truck from another fire company approaching the fire from Large Street, Lamack, in an endeavor to use the nearest hydrant, made an abrupt stop after clearing the intersection at Large and Orthodox Streets. When Jones looked ahead again and saw that Lamack had stopped, he applied his brakes and swerved the truck, but nevertheless struck the rear of the pumper truck. The ensuing crash damaged both pieces of apparatus and injuries were sustained by eight men.

While Jones and Cummings were confined to the hospital as the result of injuries they sustained in the accident, a Fire Board of Investigation took testimony and found both men chargeable with disobedience of General Order No. 18 establishing a minimum safe distance to be observed between fire apparatus going to and returning from a fire. Discipline having been recommended by the Fire Board, the Deputy Fire Commissioner ordered that both Jones and Cummings be suspended without pay for 10 days and in addition perform 20 days' extra duty without pay for the infraction of this rule of the Fire Department.

They appealed from this order to the Civil Service Commission which assumed jurisdiction of their appeals because it concluded that the 20 days of extra duty without pay really constituted a 20 day suspension, making the total period of suspension 30 days.[1]

---

[1] Under Section 7-201 of the Charter, an appeal to the Commission from a suspension order is available only to an employe ". . . who is suspended for more than ten days in any one year, . . .".

Although the 20 days' extra duty can not be literally construed as a suspension, the extended disciplinary penalty thus imposed being more punitive than a suspension, an appeal therefrom was undoubtedly available to the firemen. After hearing the testimony of appellants and other witnesses, the Commission decided that neither Jones nor Cummings was chargeable with misconduct under the circumstances. It appears from its opinion that the conclusion arrived at was predicated upon the determination that the standard of care prescribed by the rule in question was too exacting for application under the conditions here prevailing. The Commission thereupon sustained the appeal in part by countermanding the imposition of the 20 days' extra duty without pay and leaving intact the 10 day suspension. Appellants excepted to the conclusions of law and decision of the Commission and appealed to the common pleas court on the ground that having been absolved of misconduct, their appeals to the Commission should have been sustained in their entirety. The learned judge below dismissed appellants' appeals because he concluded that the Commission, having found as a fact that Jones was apparently following Lamack a little too closely, might have considered them guilty of negligence and therefore the 10 day suspension was left intact because the appellants' conduct warranted the imposition of some measure of discipline. From the lower court's order dismissing the appeals the present appeals are taken.

The Philadelphia Home Rule Charter, which was adopted by the electors on April 17, 1951, with its effective date January 7, 1952, provides in Section 7-201 that "Findings and decisions of the Commission and any action taken in conformance therewith as a result thereof shall be final and there shall be no further appeal on the merits, but there may be an appeal to

the courts on jurisdictional or procedural grounds.".
The Act of September 29, 1951, P. L. 1654, 53 PS §304,
provides that "All decisions of the civil service board
or commission in any city shall be subject to appeal to
the court of common pleas or the county court of the
county in which the city is located. . . .".

We are not compelled at this time to decide which
enactment is controlling for the instant question can
be resolved in accordance with either one. On appeals
from the Civil Service Commission, Courts of Common
Pleas in Philadelphia are invested, both under the
Charter and the Act of Assembly, with some measure
of review, since under either they may inquire into the
jurisdiction of the Commission and the regularity of
the proceedings there conducted: *Philadelphia Civil
Service Commission v. Wilson,* 373 Pa. 583, 586, 96 A.
2d 863.

The only question with which we are confronted is
whether the proceedings on their face justified the re-
sult reached by the Commission. The violation with
which appellants were charged was disobedience of a
positive rule of action adopted by the Fire Department
requiring a minimum safe distance of 150 feet between
fire apparatus. The Commission having carefully re-
viewed the testimony and having considered the cir-
cumstances surrounding the accident, must have treat-
ed the rule as flexible and not applicable to a situa-
tion where fire trucks are in close proximity to the
very scene of the fire.

In usual parlance, misconduct means a transgres-
sion of some established and definite rule of action,
where no discretion is left except what necessity may
demand. See *Citizens' Insurance Co. of Pittsburgh v.
Marsh,* 41 Pa. 386, 394.

Admittedly Jones, just before the collision, was only
100 feet to the rear of Pumper No. 20 and therefore

apparently transgressing an established and definite rule of action. The Commission being cognizant of the rule and Jones' noncompliance therewith, we search in vain for any possible reason which would support a finding of no misconduct other than the one previously alluded to, namely, that the Commission felt the rule was not to be literally applied in all circumstances. We are not prepared to say that the Commission erred in refusing to apply the rule under the circumstances here presented.

Since this Court must read the Commission's order in the light of its opinion and the opinion exonerates the employes of misconduct, the only course open to it was to reinstate appellants with full remuneration. An order at variance with its finding can not be permitted to stand, and the court below erred in sustaining the order of the Commission.

The order of the court below is reversed and it is directed that the appellants be reinstated without loss of pay.