Larry A. Lattanzio, Appellant, *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Appellee.

Argued June 7, 1973, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Eugene F. Zenobi,* with him *Louis M. Shucker, Alan N. Linder* and *J. Richard Gray,* Tri-County Legal Services, for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Israel Packel,* Attorney General, for appellee.

Opinion by Judge Rogers, September 19, 1973:

The issue presented by this case is whether on its facts the State of Pennsylvania abridged the appellant's, Larry A. Lattanzio's, freedom of speech guaranteed by the First and Fourteenth Amendments to the United States Constitution by denying him unemployment compensation. The action complained of was based upon the compensation authorities' conclusion that Mr. Lattanzio had rendered himself ineligible for compensation by failing "without good cause . . . to accept suitable work" as provided by Section 402(a) of the Unemployment Compensation Law, Act of December 5, 1936, P. L. (1937) 2897, as amended, 43 P.S. §802(a).

The appellant was laid off from his employment as the crew chief of a burglar alarm installation team because his employer did not have enough work. At the time he was laid off the appellant had neither beard nor mustache and his hair style was unremarkable. When he was called back to work four months later the appellant's hair was of such length that his employer believed that it would "lap over the uniform," and he had grown a mustache and beard which together appeared to his employer as "just one mass of hair." The employer offered the appellant employment upon condition that he shave his beard, trim his mustache and shorten the length of his hair. Appellant's supervisors described the appellant's duties as including the function of providing liaison between customers and the employer in the matter of the installation of its burglar alarms and expressed the employer's judgment that the appellant's appearance was unsuitable to his work. The appellant refused to alter his hair, beard or mustache because he considered the employer's condition to be, as he put it, "discriminatory." He had and has no objection to wearing the employer's uniform and he appeared at the hearing before the referee of the Board

of Review, conducted about six weeks after his aborted recall, without the beard.

The appellant bases his case for the unconstitutionality of the unemployment authorities' denial of compensation on the First Amendment's protection of his freedom of speech, made applicable to state action by the Fourteenth Amendment.[1] We must therefore determine whether the appellant's predilection for full beard, mustache and very long hair at the time of the employer's offer to rehire him, was the exercise of the right of speech; for if it was, the denial of unemployment compensation would be an infringement of a right guaranteed by the First Amendment. *Sherbert v. Verner,* 374 U.S. 398, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963);[2] *see also Speiser v. Randall,* 357 U.S. 513, 78 S. Ct. 1332, 2 L. Ed. 2d 1460 (1958).

The appellant has not told us what message he sought to convey by permitting the hair of his head and face to grow between the time of his being laid off and his recall. Whether anything more than a temporary inclination was involved seems unlikely in the light of the facts that both before and after his recall the appellant was beardless and that when earlier employed he was conventionally coiffed. We have concluded that his hair style lacks sufficient communicative content to warrant First Amendment protection.

---

[1] Appellant makes no claim under the due process clause of the Fifth or the retained rights provision of the Ninth Amendment or the due process clause of the Fourteenth Amendment. Therefore we have considered none of these limitations. We do not imply that the outcome here would have been different if one or more of these other provisions had been invoked.

[2] Holding that the disqualification of an unemployment compensation claimant for refusal to work on Saturday, the Sabbath of her faith, imposed an unconstitutional burden upon her freedom of religious exercise.

It is clear that not every form of conduct, even if intended to express some idea, is constitutionally protected speech. As former Chief Justice WARREN wrote in *United States v. O'Brien,* 391 U.S. 367, 376, 88 S. Ct. 1673, 1678, 20 L. Ed. 2d 672, 679 (1968) : "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." It has also been recognized that as the non-verbal message becomes less distinct, the justification for invoking the substantial protections of the First Amendment becomes more remote. *Richards v. Thurston,* 424 F. 2d 1281, 1283 (1st Cir. 1970). Furthermore, it seems to us that where, as here, the state action complained of does not directly, and is not intended indirectly, to regulate the conduct asserted to be a form of expression, the message sought to be conveyed by the conduct should be clearly perceptible. In *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969), heavily relied upon by the appellant, the Supreme Court held that the wearing of black armbands by school children in proclaimed protest of the Vietnam engagement was "closely akin to 'pure speech' " and entitled to protection under the First Amendment. The Court was, however, careful to add : "The problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style or deportment. Cf. Ferrell v. Dallas Independent School District, 392 F. 2d 697 (1968). . . ." 393 U.S. at 507-8, 89 S. Ct. at 737, 21 L. Ed. 2d at 738. In *United States v. O'Brien, supra,* the Supreme Court concluded that the public burning of draft cards at so-called peace rallies was a form of expression (but that a substantial national interest justified its regulation by Congress). In *Tinker*

and *O'Brien,* the messages intended to be conveyed by the conduct sought to be regulated were clear enough.

The public school hair and dress code cases are in one sense closer to the instant appeal. There, too, the persons invoking constitutional protection for their choice of appearance while in public seem more inclined to self-gratification than to communication. The split in the Federal cases on the general subject is notorious.[3] Most of the cases which have come down on the side of the entitlement of such conduct to constitutional protection have done so on grounds other than that of the First Amendment. In *Karr v. Schmidt,* 460 F. 2d 609 (5th Cir. 1972), however, the court rejected the contention that the First Amendment afforded protection in this kind of case with the following statements, with which we agree: "We find considerable difficulty, however, with the First Amendment approach to this question. First, we think it doubtful that the wearing of long hair has sufficient communicative con-

---

[3] Our research indicates that in four circuits federal courts have upheld regulations banning long hair. *See Freeman v. Flake,* 448 F. 2d 258 (10th Cir. 1971), *cert. denied,* 405 U.S. 1032, 92 S. Ct. 1292, 31 L. Ed. 2d 489 (1972) ; *King v. Saddleback Junior College,* 445 F. 2d 932 (9th Cir. 1971) ; *Jackson v. Dorrier,* 424 F. 2d 213 (6th Cir. 1971) ; *Ferrell v. Dallas Independent School District,* 392 F. 2d 697 (5th Cir. 1968), *cert. denied,* 393 U.S. 856, 89 S. Ct. 98, 21 L. Ed. 2d 125 (1968). However, federal courts in five other circuits have prohibited such regulations on a variety of theories. *See Stull v. School Board of Western Beaver Junior-Senior High School,* 459 F. 2d 339 (3d Cir. 1972) ; *Massie v. Henry,* 455 F. 2d 779 (4th Cir. 1972) ; *Bishop v. Colow,* 450 F. 2d 1069 (8th Cir. 1971) ; *Richards v. Thurston,* 424 F. 2d 1281 (1st Cir. 1970) ; *Breen v. Kahl,* 419 F. 2d 1034 (7th Cir. 1969). Justice DOUGLAS in his dissents to the denial of the petitions for writ of certiorari in *Freeman, supra,* as well as in *Olff v. East Side Union High School District,* 305 F. Supp. 557 (N.D. Cal. 1969), *cert. denied,* 404 U.S. 1042, 92 S. Ct. 703, 30 L. Ed. 2d 736 (1972), observed that the decisions of the lower federal courts are "in disarray," but the court has thus far refused to resolve the conflict.

tent to entitle it to the protection of the First Amendment. . . . For some, no doubt, the wearing of long hair is intended to convey a discrete message to the world. But for many, the wearing of long hair is simply a matter of personal taste or the result of peer group influence. Appellee Karr, for example, has brought this suit not because his hair conveys a message but 'because I like my hair long.' Surely if we are to have workable rules of constitutional law, the validity of the regulation cannot turn on the plaintiff's subjective motivation in wearing his hair long." 460 F. 2d at 613-4.

As noted, the appellant has not told us what his hair as it was at the time of his recall expressed. We find nothing in the record which suggests that it was, or was intended to be, a symbol for speech entitled to the shelter of the First Amendment.[4]

Having determined that the claimed constitutionally protected right of the appellant was not infringed upon, we are not required to decide whether a compelling or substantial state interest justified the denial of unemployment compensation.

### ORDER

And now, this 19th day of September 1973, it is ordered that the appeal of Larry A. Lattanzio from the order of the Unemployment Compensation Board of Review be and it hereby is dismissed.

---

[4] A treatment of the subject of hair style as symbolic speech is: 84 Harv. L. Rev. 1702. *See also* "Symbolic Conduct," 68 Colum. L. Rev. 1091.